THOMAS FARRAR,
tenant in taille of lands, to whicb slaves were annexed, sold, for his life, two of them, a woman and a boy her child, to James Waddill, who sold them to John Pruett, from whom the defendent, supposing them to be the property of John Pruett, purchased them for 75 pounds.
The plaintiff, eldest son and heir in taille of Thomas Farrar, was not able to discover in whose possession the two slaves, with several others born by the woman after the sale of her, were, until more than five years had elapsed from the time, when his right of action accrued by the death of his father; hut soon after he discovered them to be in possession of the defendent, against him this suit was commenced, in Amelia county court in chancery, to recover the two negroes, with the after-born children of the woman, and their profits.
The bill stated, that the defendent knew or suspected the slaves which he bought to be under incumbrance, and John *2 Pruett not to have power to convey a legal title to them, and therefore took from him a warranty in the bill of sale.
The defendent, by answer, alledged himself to have been a purchaser for a valuable consideration honestly paid, and denied notice of the plaintiffs title before the purchase, but confessed that he had notice, sometime after he had purchased the slaves, and paid for them, that they were entailed; and pleaded the statute for limitation of actions in bar of the plaintiffs demand.
The plaintiff replied, that he ought not to be precluded, because the slaves were removed, by John Pruett, to such a distance from the plaintiffs residence, for the purpose of concealment, that, though the five years had elapsed from his coming of age, before suit commenced, he could not, in all that time, by the most diligent search, find out where, or in whose possession, the slaves were, and never made this discovery until three months before the commencement of this suit.
Many witnesses were examined, hut no material fact, more than the facts stated before, and admitted by the answer, were proved, unless it be this; that the defendent, after having notice of the plaintiffs title, which notice probably was in the life time of Thomas Farrar, proposed to sell the slaves to one who might carry them to some remote parts, perhaps with design to prevent a recovery of them by the plaintiff.
The county court dismissed the bill, the high court of chancery, to which the plaintiff appealed, on the 20 day of may, 1788, reversed the decree, two of the three judges, whereof the court at that time consisted, declaring their opinion, in opposition to the other, to he, that the plaintiffs title to the slaves claimed by him is well established, and that, upon the whole CIRCUMSTANCES of the case, the defendent ought not to be admitted to avale himself of the act of limitations in bar of such title, and decreed the defendent to deliver up the slaves, and pay their profits, an account whereof was directed to be stated by auditors, to the plaintiff.
Upon this opinion, he who dissented from his colleagues submits to censure these
REMARKS:
The circumstances, upon which the plea was disallowed must be one or some or all of the following: the warranty contained in the bill of sale from John Pruett to the defendent; the removal of the slaves by John Pruett to a great distance, for the purpose of concealment; the defendents failure to disclose his possession of the slaves to the plaintiff, after his title to them, and searches to discover the possessor of them, were *3 known to the defendept; the defendents treaty, with a dealer in slaves, to transport them to remote places, and thereby to hinder the plaintiff from reclaiming them.
The first of these circumstances, is at most, a slight presumptive evidence of a suspicion that John Pruetts title might not be a good title, but how this can prevent the operation of the statute is not discerned ; and therefore this circumstance is believed not to be one of those to which the two judges alluded.
The second circumstance is thought to be not more pertinent, and therefore perhaps was also not intended, for any thing done by John Pruett, in which the defendent did not act a part, ought not to be detrimental to the latter, and that he acted any part in the removal of the slaves by John Pruett is not proved, nor even pretended, in the bill or replication.
The third circumstance is not admitted to he one upon which the defendent ought not to have the benefit of the statute, for a bona fide purchaser for a valuable consideration, without notice of the title of another, according to numberless determinations by courts'of equity, is not bound to discover that which will enable the true owner to recover the thing claimed, and such a purchaser was the defendent. his failure then to discover his possession of the negroes, which discovery a court of equity would not have compelled him to make, was not a wrong, nor is such a silence comprehended in the 6th section of the statute for limitation of actions, providing that a party absconding or concealing himself, or by removal out of the country, or out of the county of his residence, when the cause of action accrued, or by any other indirect ways or means, defeating or obstructing any person or persons, who have title thereto, from bringing and maintaining actions within the times limited, by the act. If this silence be comprehended in that section, it must he by the words, indirect ways or means defeat or obstruct any person or persons from bringing and maintaining actions. a man who deféateth another must do something, hut he who is silent doth nothing, a man, who obstrueteth another, must either throw the obstruction in his way, or must suffer the obstruction which he, the obstructor, had thrown in the others way, to remain their. For the words of the act are, if any person obstruct another, in bringing his action within the time limited, such defendent, that is the party obstructing, shall not be admitted to plead the act. The party therefore who is not admitted to plead the act is he who originaly caused the obstruction, not he who suffered an obstruction, which a third party had caused, to remain, the obstruction to the plaintiffs commencement of his action within the time limited in this case *4 was, that be did not know in whose possession tbe slaves were, but John Pruett, by removal of the slaves to a great distance, not the defendent, caused that ignorance, the defendent, therefore, did not obstruct the plaintiff in commencing his action within the time limited, consequently the defendent is not inhibited to plead the acL the defendent doth not appear at any time to have denied the slaves to be in his possession, and that he was bound to go or send to the plaintiff and give him information thereof perhaps no man will say.
The fourth circumstance was, that the defendent meditated and proposed a sale of the slaves to one, who might transport them to places remote, for the purpose probably of defeating or obstructing the plaintiff, but the defendent did not prosecute bis design ; the defendent, therefore, did not thereby defeat or obstruct the plaintiff, more than he would have defeated or obstructed him, if the design had never been conceived, consequently the defendent, by this circumstance, was not inhibited to plead the act. besides, the court could not regularly consider this circumstance, because it was not charged in the bill, if it had been charged, the defendent, by answer, might have denied the fact, and against that denial the proof, which was the attestation of a single witness,* would not have prevaled.
From the decree of the high court of chancery the defendent appealed, but the parties compounded the matter.